UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

         v.

JEREMY TRAPP,

                Defendant.
------------------------------------------------------------X

**MEMORANDUM AND ORDER**
20-CR-308 (WFK)
20-CR-454 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 30, 2021, Jeremy Trapp ("Defendant") pleaded guilty to the top counts of two Indictments, charging him with Destruction of a Motor Vehicle, in violation of 18 U.S.C. § 33(a), and Wire Fraud, in violation of 18 U.S.C. § 1343. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to 18 months of custody, to run concurrently on both counts; 2 years of supervised release, to run concurrently on both counts; restitution in the amount of $9,722.88; and a $200.00 special assessment.

## BACKGROUND

On August 13, 2020, a grand jury returned a two-count Indictment in *United States v. Trapp*, Case No. 20-CR-308 ("*Trapp I*"), charging Defendant with Destruction of a Motor Vehicle, in violation of 18 U.S.C. § 33(a), and Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). While investigating Defendant for these crimes, the Government uncovered evidence suggesting Defendant defrauded the Small Business Administration ("SBA") by fraudulently obtaining loans through its Economic Injury Disaster Loan ("EIDL") Program. *See* Presentence Investigation Report ("PSR") ¶ 13, ECF No. 42 (Dkt. No. 20-CR-308). The Government presented this evidence to a grand jury, which returned a second, three-count Indictment in *United States v. Trapp*, Case No. 20-CR-454 ("*Trapp II*"), charging Defendant with Wire Fraud, in violation of 18 U.S.C. § 1343, Theft of Government Property, in violation of 18 U.S.C. § 641,

1

and Making a False Statement to the Small Business Administration, in violation of 18 U.S.C. § 1014.

On April 30, 2021, Defendant pleaded guilty before Chief Magistrate Judge Cheryl L. Pollak to Count One of the Indictment in *Trapp I* (Destruction of a Motor Vehicle) and Count One of the Indictment in *Trapp II* (Wire Fraud), pursuant to a plea agreement. On June 24, 2021, District Judge Sterling Johnson, Jr. accepted the plea. Both cases were reassigned to this Court on July 14, 2022.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to

consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. Family and Personal Background

Defendant was born on April 24, 1996, in Brooklyn, New York. PSR ¶ 48. His father, Acinto Trapp, is age 58 and does not have a presence in Defendant's life. *Id.* His mother, Loyda Miranda, age 55, is unemployed and in good health. *Id.* When Defendant was a young child, his mother became involved with Noberto Casiano, age 63, who delivers car parts and is also in good health. *Id.* Defendant reports he does not have a great relationship with his mother and stepfather. *Id.* They are aware of his arrest and remain supportive of him to an extent. *Id.*

Defendant has three maternal half-siblings—Eddie Rivera, age 35, Amanda Miranda, age 34, and Jose Miranda, age 23—all of whom are in good health, are aware of Defendant's arrest and remain supportive of him. *Id.* ¶ 49. Defendant also has one full sibling, Jonathan Trapp, age 27, who also is supportive of Defendant. *Id.*

When Defendant was one year old, his mother gave full custody of Defendant to her parents because of her challenges with drug addiction. *Id.* ¶ 50. Defendant reports he had a "good" childhood but states his grandparents struggled to provide for him financially. *Id.* He resided with his maternal grandparents in Brooklyn, New York, until 2004, when he and his grandmother moved to Staten Island after his grandfather passed away. *Id.* In 2004, when

3

Defendant was 12 years old, his grandmother moved with him to Pennsylvania. *Id.* Defendant ultimately moved back to Brooklyn at the age of 15 to reside with his mother and stepfather, with whom he has resided since his arrest, because his grandmother was diagnosed with cancer and could no longer take care of him. *Id.* ¶¶ 50, 52. Defendant's grandmother passed away in 2011. *Id.* ¶ 50. Defendant had difficulty coping with the death of his grandparents. *Id.*

Since moving back with his mother, Defendant states his mother and stepfather have been aggressive and verbally abusive towards him. *Id.* He reports they threatened to kick him out of the home on various occasions and that his mother struggles with drug addiction and his stepfather has issues with alcohol. *Id.* Defendant's mother reported that Defendant does not listen or contribute to household expenses and responsibilities, and the circumstances of his arrest have caused her significant stress. *Id.* ¶ 53. She states she does not wish for Defendant to continue residing in her home and that an incident involving Defendant and her landlord caused her to be concerned about losing her apartment. *Id.* Defendant does not have his own room and sleeps in the living room. *Id.* ¶ 52.

2. Educational and Employment History

Defendant graduated from Thomas Jefferson High School in Brooklyn, New York, in 2015. *Id.* ¶ 63. He reported being suspended several times for fighting. *Id.* Defendant stated he was taking courses, including the Freedom Prep Class, at City University of New York's LaGuardia Community College in Queens, New York. *Id.* ¶ 62. Records from the college indicate Defendant attended courses from September 12, 2018 until December 19, 2019 and that Defendant had no disciplinary incidents while in school. *Id.* On July 29, 2021, Defendant completed the Hope Program in Brooklyn, New York, which provides training, adult basic education, industry certifications, work wellness services, internships, and job placement

assistance. *Id.* ¶ 64. Defendant also reported involvement with Brooklyn Job Corps, which provides on-the-job training to help participants find a future career path. *Id.*

At the time of the writing of the PSR, Defendant reported he was unemployed but was actively searching for a job. *Id.* ¶ 65. According to defense counsel, Defendant began working as a participant of the Doe Fund's Ready, Willing and Able program in May of 2022, where he works 5 days a week sweeping and cleaning the streets of New York City, earning $400.00 per week. Def's Sentencing Mem. at 16, ECF No. 56. Prior to this, Probation Department ("Probation") notes the only employment Defendant reported was from April 2018 to April 2019, when he worked as a door-to-door salesman for Gatson's Electric in Queens, New York. *Id.* In this capacity, Defendant earned his salary based on commission, typically amounting to $500.00 to $600.00 every two weeks, but this job ended when the company closed. *Id.* According to the president of Gatson's Electric, there is no record of Defendant having worked there. *Id.* Defendant's mother also advised she is unaware of Defendant having any employment history. *Id.*

During periods of unemployment, Defendant states he has supported himself by selling water bottles on the streets and collecting recycled cans for deposit refunds. *Id.* He has also been financially supported by his mother and stepfather. *Id.*

3. Prior Convictions

Defendant does not have any criminal convictions. *See id.* ¶¶ 40-45. He was arrested for the instant offense on July 17, 2020; all local charges were dropped in lieu of federal prosecution. *Id.* ¶ 46. He was also arrested on June 13, 2022 for allegedly entering a subway station without paying the fare. Defendant states he was given permission by an officer to enter the subway without paying but was later arrested by another officer.

### 4. Medical and Mental Health

Although Defendant is physically healthy, *see id.* ¶ 56, he suffers from several mental impairments, including adjustment disorder with anxiety, ADHD, autism spectrum disorder, depression as well as possible major depression, and bipolar disorder. *Id.* ¶¶ 57-60. Defendant has been enrolled in mental health treatment with the New York Mental Health Group in Brooklyn, New York while on pretrial supervision. *Id.* ¶ 59. He receives individual counseling and group counseling once a week, as well as monthly medication monitoring for his prescription for an antidepressants. *Id.* Defendant also reports taking another medication used to treat depression as a sleep aid. *Id.* ¶ 58.

### 5. Substance Abuse

Defendant reported experimenting with marijuana from age 16 to 21 to deal with stress, but he does not currently use drugs of any kind. *Id.* ¶ 61. He reported drinking alcohol on occasion but never to the point of intoxication. *Id.*

### 6. Nature and Circumstances of the Offense

#### a. *Destruction of a Motor Vehicle (Trapp I)*

On July 13, 2020, a group of demonstrators gathered outside the Brooklyn Criminal Court building in downtown Brooklyn, New York, to protest the murder of George Floyd. PSR ¶ 6. As the demonstration was winding down, Defendant spoke with an individual who was a confidential source ("CS") for the New York City Police Department ("NYPD"). *Id.* ¶ 6. Defendant expressed his belief that police were racist, that he wanted to harm police officers and their supporters, and that he had previously been involved in destroying property and burning a police car. *Id.* ¶ 7. Defendant also revealed he wanted to cut the brake lines on police cars. *Id.* He and the CS exchanged telephone numbers so they could contact each other in the future. *Id.*

Defendant met with the CS on July 15, 2020. *Id.* ¶ 8. During the meeting, Defendant stated he wanted to "burn the Verrazano-Narrows bridge down" so that "white supremacists" could not use it to get to Brooklyn from Staten Island. *Id.* Defendant also reiterated wanting to harm police officers by cutting the brakes on their police cars and burning down their precincts. *Id.* Specifically:

Defendant again met with the CS on July 16, 2020. *Id.* The two drove to the Brooklyn side of the Verrazano-Narrows Bridge to photograph the bridge. *Id.* Defendant then suggested that he and the CS drive around Brooklyn to look for police cars for Defendant to cut the brake lines on. *Id.* While driving, the two saw various police cars, but because none were unattended, they ceased their search. *Id.*

During the July 16, 2020 meeting, Defendant again reiterated his desire to hurt law enforcement and commit fraud. Specifically, he stated:

- "I'm down with credit card fraud, I'm down with robbing a bank, I'm down with all shit that will get me some money."
- "Burn that bridge down, see that, how long that Verrazano bridge. Burn that shit down. All white supremacists will be stuck there."
- "Its gonna sting them in the ass. My mom always told me hit them where it hurts the most."
- "Now a cop car, you know what you do, cut their brakes off, put water or cut their brakes off. Either way, its two ways you could fuck up a cop car, burn it."
- "We need to burn down the fucking precinct man."

7

- "I want to burn down a precinct where it's far from my house and nobody knows me."
- "If I were to go to Bay Ridge, I'm trying to fucking pop fucking cop car brakes. I'm trying to fuck up cop cars."
- "On Friday, I wanna fuck up mad cop cars. All I gotta do is pop the [brakes], that's it. Hit them where it hurts, fuck their brakes up."

Gov't Resp. at 3, ECF No. 57.

On July 17, 2020, Defendant met with the CS and showed the CS a scissor-like tool he had brought in his backpack, that could be used to sever a vehicle's brake lines. *Id.* ¶ 9. At approximately 4:00 P.M. that day, the two approached a marked NYPD van parked near 4th Avenue and 42nd Street in Brooklyn. *Id.* Defendant crawled under the NYPD van and reached for something near one of the vehicle's wheel-wells while the CS acted as a lookout. *Id.* Defendant then crawled out from the vehicle and continued to drive around Brooklyn with the CS looking for other police vehicles to sabotage. *Id.* NYPD officers, who had been surveilling Defendant, arrested him once he and the CS returned to Brooklyn. *Id.* Later inspection of the NYPD van revealed that a line for a wheel speed sensor had been severed. *Id.*

Defendant was later apprehended by Federal Bureau of Investigation ("FBI") agents on August 5, 2020. *Id.* ¶ 10. Defendant initially resisted arrest but was ultimately detained. *Id.*

### b. *Wire Fraud (Trapp II)*

During a search of Defendant's cell phone in connection with Defendant's prosecution for Destruction of a Motor Vehicle, federal investigators discovered screenshots indicating Defendant applied for a loan through the EIDL Program. *Id.* ¶ 13. Administered by the SBA, the EIDL Program provides small business with low-interest loans of up to two million dollars to

8

help offset the temporary loss of revenue experienced by many businesses from the Covid-19 pandemic. *Id.* ¶ 11. Defendant applied for and received a $42,400.00 loan (plus a $10,000.00 advance) through the EIDL Program to pay employees of what he claimed was a car wash business located at his Brooklyn residence. *Id.* ¶ 13. In his application, Defendant alleged he was the sole proprietor of the car wash business, that the business opened on April 4, 2018, had 10 employees, and had a gross revenue of $150,000.00 for the 12 months prior to the Covid-19 pandemic. *Id.*

Subsequent investigation revealed, however, that a car wash business was not located, nor had ever been located, at Defendant's residence, and the statements Defendant made in support of his loan application were entirely fictitious and fraudulent. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of the Defendant's offense, which involved fraudulently diverting relief funds from the United States which could have gone to struggling small businesses during the Covid-19 pandemic as well as cutting the brake line of an NYPD vehicle—an act that could have caused serious harm to law enforcement and civilians had Defendant's crime gone unnoticed. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his offense.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Destruction of a Motor Vehicle, in violation of 18 U.S.C. § 33(a), and one count of Wire Fraud, in violation of 18 U.S.C. § 1343. For these offenses, Defendant faces a maximum term of imprisonment of twenty years for each count. Defendant also faces a maximum term of supervised release of three years for each count, with both terms to run concurrently. 18 U.S.C. §§ 3583(b)(2), 3624(e).

A term of not less than one nor more than five years of probation is also available for each count, with both terms to run concurrently, because the instant offenses are Class C Felonies. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist. 18 U.S.C. § 3563(a)(2). Based on Defendant's financial profile, Probation reports Defendant appears unable to pay a fine. *Id.* ¶ 70.

Defendant also faces a maximum fine of $250,000.00 under 18 U.S.C. § 3571(b) and a $100.00 special assessment for each count. 18 U.S.C. § 3013. Pursuant to the Preliminary Order of Forfeiture, Defendant was required to forfeit $42,677.12 for Count One of *Trapp II*.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable guideline for 18 U.S.C. § 33(a) offenses is U.S.S.G. § 2B1.1, which provides a base offense level of seven, since Defendant was convicted of an offense referenced to this guideline and that offense of conviction has a statutory maximum term of imprisonment of 20 years or more, per U.S.S.G. § 2B1.1(a)(1). Because the offense involved the conscious or reckless risk of death or serious bodily injury since Defendant intentionally severed the anti-locking braking system of an NYPD van, seven levels are added pursuant to U.S.S.G. § 2B1.1(b)(16)(A). Accordingly, Defendant's adjusted offense level for Count One in *Trapp I* is 14.

The applicable guideline for 18 U.S.C. § 1343 offenses is U.S.S.G. § 2B1.1, which provides a base offense level of seven because Defendant was convicted of an offense referenced to this guideline and that offense of conviction has a statutory maximum term of imprisonment of 20 years or more, per U.S.S.G. § 2B1.1(a)(1). Because Defendant is responsible for a total loss amount of $52,400.00, which is greater than $40,000.00 but less than $95,000.00, six levels are added pursuant to U.S.S.G. § 2B1.1(b)(1)(D). Accordingly, Defendant's adjusted offense level for Count One in *Trapp II* is 13.

The Sentencing Guidelines provide a multiple count adjustment. To calculate the multiple count adjustment, units are assigned to each set of grouped counts under U.S.S.G. § 3D1.4(a), (b) and (c). Here, the counts are not grouped pursuant to U.S.S.G. § 3D1.2 because they do not involve the same harm or the same act.

The greater of the two adjusted offense levels is 14, which results in one unit. One additional unit is counted under U.S.S.G. § 3D1.4 because the offense level for the second count is one level less serious. Therefore, a two-level increase to the greater of the two adjusted offense levels is warranted pursuant to the number of units assigned by the amount indicated in

11

the table at U.S.S.G. § 3D1.4. Because Defendant has demonstrated acceptance of responsibility for the offense, the offense level is decreased by two levels under U.S.S.G. § 3E1.1(a). A further one-level decrease is warranted because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty. U.S.S.G. § 3E1.1(b). Therefore, Defendant's total offense level is 13.

Defendant's lack of prior convictions results in a criminal history score of zero (0). A criminal history score of zero (0) establishes a criminal history category of I. For an offense level of 13 and a criminal history category of I, the Sentencing Guidelines suggest a term of 12 to 18 months of incarceration. *See* U.S.S.G. Ch. 5, Pt. A. As an alternative, the Court may impose a term of imprisonment of 6 months of custody followed by a term of supervised release with a special condition requiring 6 months of community confinement or home detention. U.S.S.G. § 5C1.1(d)(2).

The Guidelines further suggest a term of supervised release of 1 to 3 years for each count and a fine of between $5,500.00 and $55,000.00.

Probation recommends a sentence of 1 year and 1 day of incarceration for each count, to run concurrently, an order of restitution in the amount of $9,722.88 for Count One of *Trapp II*, 2 years of supervised release with special conditions for each count, also to run concurrently, and a $200.00 special assessment. Defense counsel asks the Court to impose a sentence of time served, which here is approximately 5 months of custody and would reflect a 7-month variance from the Guidelines range, and a term of supervised release. The Government recommends a sentence of 18 months of custody.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

12

The fifth § 3553(a) factor, which requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), does not apply here.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is mandatory for both offenses because they occurred after April 24, 1996. 18 U.S.C. § 3663(A). For Count one of *Trapp I*—Destruction of a Motor Vehicle—Probation states the amount of restitution is unknown, but the Court may hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victim. 18 U.S.C. § 3664(d)(5). For Count One of *Trapp II*—Wire Fraud—the Government has recovered some of the money fraudulently received by Defendant, with the remaining amount of restitution totaling $9,722.88.

## CONCLUSION

The Court finds that a sentence of 18 months of custody, to run concurrently on both counts; 2 years of supervised release, to run concurrently on both counts; restitution in the amount of $9,722.88; and a $200.00 special assessment is appropriate. The Court does not impose a fine because Defendant does not have the ability to pay a fine. This sentence is

13

consistent with and is sufficient but not greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 5, 2022
       Brooklyn, New York